UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **CYNTHIA A. WISEMAN**, | Case No. 14-cv-01432-KI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | |

    Lisa R.J. Porter
    JP Law PC
    5200 SW Meadows Rd., Ste. 150
    Lake Oswego, OR 97035

        Attorney for Plaintiff


    Billy J. Williams
    Acting United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97201-2902

Daphne Banay
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Cynthia Wiseman brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Wiseman protectively filed an application for SSI on February 19, 2010, alleging disability beginning August 1, 2009. The application was denied initially and upon reconsideration. After a timely request for a hearing, Wiseman, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on September 19, 2012.

On September 27, 2012, the ALJ issued a decision finding Wiseman was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on July 11, 2014.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform past work, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ determined Wiseman had the following severe impairments:  degenerative disc disease, diabetes mellitus with peripheral neuropathy in the lower extremities, depression, attention deficit hyperactivity disorder ("ADHD"), and polysubstance abuse.  None of these impairments, either singly or in combination, met or medically equalled the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Given these severe impairments, the ALJ concluded Wiseman retained the residual functional capacity ("RFC") to perform light work with the following exceptions:  she can frequently climb ramps and stairs; she can frequently balance and stoop; she can only occasionally climb ladders, ropes and scaffolds; she can only occasionally kneel, crouch, and crawl; she should avoid concentrated exposure to hazards; she is limited to performing unskilled work and routine tasks; and, finally, she needs a routine work setting that does not change frequently or rapidly.

Given this RFC, the ALJ found Wiseman could perform work in the national economy, such as small parts assembler and laundry folder.

## FACTS

Wiseman was 42 years old on the date she filed her application.  She has a high school education, but not much work experience; a department store employed her for two years, which is her longest period of working.  She has a history of substance abuse with a past conviction for

Page 5 - OPINION AND ORDER

drug possession, a hindering prosecution conviction, and DUI citations; she underwent drug treatment on three occasions. She now lives with her 90-year-old grandmother and her three-year-old daughter and, at the time of the hearing, had been clean and sober for six years. She spends her time caring for her daughter, making meals, walking, and watching television.

She has told care providers about mood swings, worry, anxiety, sleep problems, and difficulty concentrating. A boyfriend raped her when she was 16 years old and she has reported experiencing flashbacks to that event. Coastal Family Health Center treated Wiseman's diabetes and degenerative disc disease from February 2008 through March 2010, and again in 2012, and Clatsop Behavioral Health Care treated Wiseman's symptoms from bipolar, ADHD, and post-traumatic stress disorder ("PTSD") from 2008 to 2010, and again in 2012. She has taken Abilify, Clonazepman, Strattera, Methylin, Metylphenidate, and Geodon to treat her mental health symptoms.

## DISCUSSION

I.   Post-Traumatic Stress Disorder as a Severe Impairment

Wiseman challenges the ALJ's failure to list PTSD as a severe impairment. She relies on the analysis provided by vocational rehabilitation consultant David Hitt, medical records referring to PTSD symptoms and, in her reply, on her own testimony and the diagnosis of PTSD made by June Longway and Lori Mason, both Psychiatric Mental Health Nurse Practitioners who treated Wiseman prior to the time period at issue here. Wiseman also suggests the ALJ neglected his duty to develop the record.

As an initial matter, before assessing the severity of any impairment, Wiseman must demonstrate that she has PTSD. In order to do so, she must establish the existence of PTSD as a

"medically determinable impairment" "through signs, symptoms, and medically acceptable clinical or laboratory findings." Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005); see also SSR 96-4p, available at 1996 WL 374187, at *1 (July 2, 1996) ("existence of a medically determinable physical or mental impairment must be established by medical evidence").

While "other sources" can be helpful in identifying the severity of an impairment, the existence of a "medically determinable impairment" itself must be established by an acceptable medical source. 20 C.F.R. § 416.913(a); see also SSR 06-03p, available at 2006 WL 2329939, at *2 (Aug. 9, 2006) (distinction between acceptable and non-acceptable medical sources is necessary because "we need evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment"). Further, under no circumstances can a medically determinable impairment be established by "the individual's own perception of the impact of the impairment, alone." Ukolov, 420 F.3d at 1005; see also SSR 96-4p, available at 1996 WL 374187, at *1 ("the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone").

None of the opinions or references in the medical record support Wiseman's argument that PTSD is one of her medically determinable impairments. Under the applicable law, Wiseman's own testimony is irrelevant to establish a medically determinable impairment as are the opinions of the vocational consultant and nurse practitioners. Indeed, the only acceptable medical source to address the issue specifically concluded Wiseman "doesn't endorse PTSD symptoms." Tr. 355 (Apr. 29, 2008 psychodiagnostic evaluation of Daryl Birney, Ph.D.).

Finally, while a Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," Tonapetyan v. Halter, 242

Page 7 - OPINION AND ORDER

F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted), given Dr. Birney's conclusion that Wiseman is not suffering from PTSD, nothing in this record is ambiguous or inadequate such that the ALJ was required to inquire further. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ did not err in leaving PTSD off of Wiseman's list of severe impairments.

II.     Treatment of "Other Source" Opinions

Wiseman argues the ALJ incorrectly rejected the opinion of Patrick McConahay, M.Ed., M.S., a vocational rehabilitation counselor with the Oregon Department of Human Services. She assumes McConahay's opinion was based on the examination performed by Hitt, the vocational consultant who assessed Wiseman with PTSD, and the ALJ neglected to address Hitt's opinion at all.

The ALJ did not address Hitt's evaluation, but concluded McConahay's opinion was entitled to little weight because he gave no reasons for his opinion nor did he assess any functional limitations.

Both McConahay and Hitt are considered among the "other sources" listed in the Social Security regulations who are not acceptable medical sources. See 20 C.F.R. § 416.913(d)(1)-(4). The ALJ may reject the opinions of such sources by giving reasons that are "germane" to that source. Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010).

A.      McConahay

McConahay submitted a letter to the Social Security Administration on Wiseman's behalf in which he opined in relevant part:

> Because of Cynthia's particular combination of cognitive limitations, psychosocial barriers, and physical limitations, Cynthia is severely restricted in her ability to train or work competitively in an integrated community setting. This counselor has determined Cynthia to be too severe to benefit from any services this office has to offer.

Tr. 322.

Wiseman contends the ALJ incorrectly rejected McConahay's opinion when it was based on her medical records and on Hitt's evaluation.

Even assuming Wiseman is correct that McConahay supported his opinion with the medical records and the evaluation–as McConahay seems to suggest by obliquely referencing in his letter "the results of the comprehensive vocational evaluation"–the ALJ correctly questioned the lack of specificity in the opinion and McConahay's failure to identify any functional limitations. McConahay failed to specify what diagnosis or test results supported his opinion or what functional limitations the comprehensive vocational evaluation revealed. See SSR 06-03p, available at 2006 WL 2329939, at *4-5 (appropriate factors include the degree to which the source presents relevant evidence to support opinion, and how well it is explained). Indeed, Hitt's vocational evaluation identified several possible occupations suitable for Wiseman to explore. The ALJ provided a germane reason supported by the record to give little weight to McConahay's opinion.[1]

---

[1] I note, too, that McConahay discussed Wiseman's options with her, noting that she was instructed by Department of Human Services' staff to apply for vocational assistance, rather than self-referring, and that Wiseman "indicated that she was more interested in pursuing SSI/SSDI than [vocational] services and employment." Tr. 333. This interaction suggests McConahay's opinion may have hinged in part on Wiseman's lack of interest in employment.

B.     Hitt

The ALJ did not address Hitt's examination results and opinion. The Commissioner contends the ALJ's failure to discuss Hitt's report does not constitute reversible error.

Hitt interviewed and tested Wiseman on May 13, 2011. Only the testing portion was overseen by Donna Wicher, Ph.D. He discovered the following: Wiseman should avoid stress that is excessive or unpredictable as a result of her bipolar disorder, as well as coworkers engaged in drug and alcohol abuse, but he opined that she was properly treating her bipolar symptoms and he did not see any additional vocational limitations caused by the disorder.

Hitt further commented that although he did not see support in her counselor's records for the anxiety he witnessed, Hitt believed Wiseman suffered from PTSD with anxiety, tension, sleeplessness, and avoidant characteristics. He believed this was the primary problem for her. He identified several past instances where her anxiety caused her to fail, but then personally observed her settle down and complete the assessment "with good effort and energy" once he reassured her. Tr. 337. He further opined, "Because she may become prone to quit on anything that is new or leave any environment that is new too early, I strongly advise that she be able to ease in gradually until she gives feedback of feeling okay (supported and comfortable) when starting anything new." Id. Additionally, referencing her "history of post-traumatic stress disorder," Hitt recommended Wiseman "avoid jobs with aversive or angry, stress-inducing public, unpredictable interpersonal conflict, and domineering or authoritarian bosses." Id. Hitt's testing of Wiseman revealed a full scale IQ in the low average range. He thought she might be capable of learning and performing personal service occupations, production work, inspection work, and other types of occupations requiring on-the-job practice for training. He listed eight

potential occupations and recommended she explore them and shorten her list to up to four areas of highest priority.

While the ALJ should have given a "germane" reason to reject Hitt's findings, any error was harmless. With respect to Hitt's diagnosis of PTSD, as an "other source" his opinion is not entitled to any weight. "Information from . . . 'other sources' cannot establish the existence of a medically determinable impairment." SSR 06-03p, 2006 WL 2329939, at *2. Further, the RFC "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments" and associated symptoms, so Hitt's conclusion about limitations caused by any PTSD is irrelevant to the ALJ's decision as PTSD is not a medically determinable impairment. See SSR 96-8p, available at 1996 WL 374184, at *1 (July 2, 1996). Because the ALJ need only include in the RFC restrictions caused by medically determinable impairments, the ALJ's error in failing to give a germane reason to reject Hitt's opinion is harmless. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) ("Even when the ALJ commits legal error, we uphold the decision where that error is harmless.").

III.    Residual Functional Capacity

Wiseman finally argues that the ALJ's RFC determination was flawed because it did not account for the limitations associated with her PTSD.

Residual functional capacity ("RFC") "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or equivalent. SSR 96-8p, available at 1996 WL 374184, at *1. RFC is the most a person can do in spite of limitations or

Page 11 - OPINION AND ORDER

restrictions. Id. The limitation of evidence in a hypothetical question to a VE is "objectionable only if the assumed facts could not be supported by the record." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant that are supported by the medical record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

Wiseman suggests the ALJ did not account for the limitations about which she testified, but Wiseman did not challenge the ALJ's credibility analysis and, as a result, I have no basis to conclude the ALJ's RFC determination is not supported by substantial evidence.[2] In addition, because she has no acceptable evidence supporting her assertion that PTSD is a medically determinable impairment, the ALJ made no error in failing to include any limitations arising from that illness. An ALJ is not required to incorporate limitations that are not supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The hypothetical the ALJ posed to the VE was proper and the ALJ was not required to include more restrictive limitations.

///

///

///

---

[2] In any event, the ALJ gave clear and convincing reasons to question Wiseman's credibility, including her daily activities of caring for her child, inconsistent statements about also caring for her grandmother, contrary medical evidence suggesting improvement, and her ability to perform part-time work.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___28th___ day of July, 2015.


                                                /s/ Garr M. King  
                                                Garr M. King  
                                                United States District Judge